## FOX CHEVROLET SALES, INC. *v.* MIDDLETON, USE OF SELF AND FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY

[No. 12, October Term, 1953.]

*Decided November 6, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Webster C. Tall* and *Hyman A. Pressman,* for appellant.

*Talbot W. Banks,* with whom were *Clark, Thomsen and Smith,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Fox Chevrolet Sales, Inc., the appellant, operates an automobile sales agency, garage and repair shop in Baltimore. The appellee sent her automobile there for repairs. The automobile was stolen from the appellant's place of business the night of the day it was delivered, and two days later was found at Waldorf in a damaged condition. The appellee and her insurance carrier sued to recover for the cost of the repairs to the automobile. After a judgment in their favor, the appellant came to this Court, complaining that the trial court erred, at the conclusion of all the testimony, in refusing a proffered demurrer prayer that there was insufficient evidence of negligence to go to the jury.

The parties are in accord as to the law which controls the case. They agree that when an automobile is

delivered to one who, for a consideration, undertakes to repair it, the contract is one of bailment for hire, or for mutual benefit, so that where, in such case, a demand and an unexplained refusal to deliver are proven, a *prima facie* case of negligence is made out; yet, when the loss or injury is accounted for as having been occasioned by a cause which would excuse the bailee, such as a burglary of his premises, then the defense is complete, unless the bailor follows by showing that the bailee, by the exercise of ordinary care and diligence might have avoided the loss or injury. The burden of proving negligence never shifts from the plaintiff. He must prove the delivery, the bailment and the failure to return; thereupon, it is incumbent upon the bailee to explain that failure. If he does so, the bailor must prove that the bailee failed to use ordinary care and diligence to safeguard such property and that his failure to perform that duty caused the loss. *General Refining Co. v. International Harvester Co., Inc.,* 173 Md. 404, 414, 415, 196 A. 131; *Schleisner Co., Inc. v. Birchett,* 202 Md. 360, 96 A. 2d 494; *Security Storage & Trust Co. v. Martin,* 144 Md. 536, 125 A. 449; and *Goldberg v. Kunz,* 185 Md. 492, 45 A. 2d 279.

The stipulation and the evidence in the instant case might well have led the jury properly to find, as facts, the following: the shop of the appellant was conducted in a three story building, formerly a school, fronting on Hanover Street, a main arterial highway, which when constructed had been raised above the former street level, so that the Hanover Street entrance led to the third floor of the building. The first floor in the rear contained a paint shop, which was entered through a door near McComas Street, two floors below Hanover Street. The building is in an industrial section of Baltimore and both to the north and south of the building and its adjoining lot are extensive rail yards leading to the Port Covington docks and storage area. Behind the building is a factory and warehouse and there are others nearby. At night the

rear of the premises would be removed from perception by ear and eye of passersby on Hanover Street and would afford prowlers and burglars an excellent opportunity to perform their missions in comparative leisure and safety because of its isolation.

The rear door that leads to the paint shop was secured on the night of the theft, as it usually was, by a padlock attached to a hasp which was nailed to the exterior of the door. Inside, leading to another part of the shop, was another door, similarly locked. Both locks were broken on the night of the theft and thus the thief was enabled to take the automobile from the shop.

The appellant employed a night watchman to guard the property but it was shown that he often failed to report for duty, and the night of the theft was one of the nights he did not appear. The watchman had been employed after the appellant had found that there had been vandalism, breaking of windows, and pilfering of equipment about the premises, facilitated by its location and unusual physical arrangement.

There have been a number of cases in which the courts of other States have concluded, on similar facts, that the question of the negligence of the bailee was one for the jury. In *Harding v. Shapiro,* 165 Minn. 248, 206 N. W. 168, the garage involved was locked by means of a three-eights inch chain fastened by a padlock on the exterior of the door. Thieves cut the chain during the night, supposedly with a bolt cutter, and stole the plaintiff's car which had been left in the defendant's care. The court held that the matter had been properly submitted to the jury. It said that burglars were accustomed to look over the proposed scene of operations and that: ". . . insecure and easily broken fastenings may amount to an invitation. It is so easy to cut a three-eights inch chain, even though it be of steel, that it would be presumptuous for us to say as a matter of law that the use of such a chain, exposed as was this one to burglarious attack, to pro-

tect property stored with a bailee for hire, is due care as a matter of law. We consider the question one of fact." The Court pointed out in *Steenson v. Flour City Fuel & Transfer Co.,* 144 Minn. 75, 175 N. W. 681, that no watchman was employed, that entry could be made through an open window, and merely by opening a hook, a door could be opened to permit the exit of an automobile, so that it was for the jury to decide whether this arrangement amounted to negligence. In *Smith v. Cohen,* 116 Pa. Super. 395, 176 A. 869, the night watchman left for a few minutes, and during his absence, plaintiff's automobile was stolen from the garage. The Court held that this was evidence to go to the jury on the question of negligence. *Rogers v. Murch,* 253 Mass. 467, 149 N. E. 202, where there was an inadequate lock on the windows through which access had been gained which led the Court to conclude that: ". . . the jury could properly find that reasonable care and prudence required that the premises should have been more securely safeguarded by other or additional locks, or if such was not feasible, by a night watchman." In *Hodell v. Towers Stores, Inc.,* 218 App. Div. 572, 218 N. Y. Supp. 561, the evidence was that the theft occurred from a warehouse located in a neighborhood described as "a pretty bad place". Watchmen were not employed on Saturday afternoons and Sundays. The court held this to be evidence of negligence and an invitation to those criminally inclined, particularly in view of the neighborhood. See also *Textile Overseas Corp. v. Riveredge Warehouse Corp.,* 275 App. Div. 236, 88 N. Y. Supp. 2d 429; *Tatro v. Baker-Fisk Hugill Co.,* 215 Mich. 623, 184 N. W. 449; and *Farrell v. Universal Garage Co.,* 179 N. C. 389, 102 S. E. 617.

We think that the evidence in this case clearly meets the tests which have been set up by the cases which, on similar facts, have held that the question of negligence is a question for the jury. Reasonable men could well find, as the jury did in this case, that the appellant had failed

to live up to its duty to use ordinary care and diligence in safeguarding the property entrusted to it. See *Goldberg v. Kunz, supra,* at page 498, 45 A. 2d 279, and *Security Storage & Trust Co. v. Martin, supra.* This is not to say, as the appellant urges, that affirmance of this appeal would mean that the failure to employ a watchman in every mercantile establishment, as, for example, a jewelry store, would be evidence of negligence if a theft occurred. This Court has held on several occasions that the test to be applied is whether, in the particular situation, there was failure to use such care as persons of common prudence in their own situation and business usually use in the custody and keeping of similar property belonging to themselves. See *Maury v. Coyle,* 34 Md. 235; *Third National Bank v. Boyd,* 44 Md. 47; and *Security Storage & Trust Co. v. Martin, supra.* There was no evidence offered in the instant case as to custom or usage in the trade. Each case must be decided on its own facts. What we hold here is that the building's environment, its physical arrangement, the evidence of prior thefts, the customary employment of the watchman and his absence when the theft took place, and the locks used, considered together, are sufficient to present a jury question.

Appellant relies heavily on *Hogan v. O'Brien,* 212 App. Div. 193, 208 N. Y. Supp. 477; and *Minneapolis Fire & Marine Ins. Co. v. Porter,* 328 Mich. 11, 43 N. W. 2d 46. In the *Hogan* case, the plaintiff had consented to an arrangement where the owners of the garage had given a key to each customer so that he would have access to his automobile after midnight when neither the owner nor his employees were there. It was held that it was not negligence to distribute the keys to various customers, particularly since the plaintiff consented to the arrangement which was, in part, for his own convenience. Moreover, it was proven that the garage doors were securely locked and were intact so that the plaintiff's car must have been removed

by someone having a key. The Court said: "No evidence points to the guilt of the defendant in removing the car with any more certainty than it does to the guilt of any of the persons mentioned, [the other customers] and with far less certainty than it does to the guilt of the plaintiff's chauffeur." In the *Porter* case, the lower court had found that the garage keeper's negligence was not in failing to secure the garage properly, but rather in failing to discover the theft and report it to the police for several days after it occurred. Two days after the theft the car was damaged in a collision. The appellate court held that the failure to discover the theft was not the proximate cause of the collision and therefore denied recovery for the loss. It is apparent that neither of the cases relied on by the appellant could, on the facts here, control the decision of the case at bar.

*Judgment affirmed, with costs.*